SOUTHWESTERN SURETY INSURANCE COMPANY OF OKLAHOMA ET AL. V.
JAMES E. FERGUSON.

Decided October 19, 1910.

**1.—Injunction—Granting Ex Parte.**

The granting of an injunction without first setting down the application for hearing is a practice not commended, but it is not forbidden by the Act of April 22, 1909, Laws Thirty-first Legislature, p. 354.

**2.—Injunction—Rescission of Contract—Withdrawal of Deposit—Equity.**

Petition considered in an action by a subscriber to stock in a corporation to rescind his contract on the ground of fraud and failure to comply with an undertaking by the corporation to keep a deposit, proportioned to the subscriber's stock, in a bank of which he was president and chief stockholder, and held not to support the issuance of an injunction against the withdrawal by defendant of the deposit made in such bank.

Appeal from the District Court of Bell County. Tried below before Hon. John D. Robinson.

*Head, Dillard, Smith & Head,* for appellant.

*W. O. Cox,* for appellee.—When the effect of a temporary injunction is to hold matters in statu quo without inflicting serious loss on the defendant, it may be granted. Rev. Stats., art. 2989; subdivisions 1 and 2; Sumner v. Crawford, 91 Texas, 129-132; Jeff Chaison Townsite Co. v. McFaddin, Wiess & Kyle Land Co., 56 Texas Civ. App., 611; 1 Joyce on Injunctions, sec. 25.

KEY, CHIEF JUSTICE.—This is an appeal, authorized by recent legislation, from a perliminary ex parte order granting a writ of injunction as prayed for in the plaintiff's petition. Though not required to do so both parties have filed briefs in this court, and we copy the following statement from appellee's brief:

"Appellee Jas. E. Ferguson, plaintiff below, on August 10, 1910, presented to the Hon. John D. Robinson, judge of the District Court of Bell County, Texas, in chambers, a petition for an injunction, alleging, among other things, in substance, that he is the owner of a majority of the stock of Temple State Bank, of which he is president; that in July, 1909, W. B. Munson, G. L. Blackford and S. P. Ancker, as the organization committee thereof, proposed to appellee the organization of a corporation which was afterwards organized and known as Southwestern Surety Insurance Company of Oklahoma, and in pursuance of the plan of organization said committee named the Denison Bank & Trust Company as trustee for the proposed corporation, said trustee to receive for said company moneys paid and notes executed for the capital stock in said company pending the organization thereof. That in consideration of the obligation of the proposed company, made by its organization committee pending its organization and made upon its organization and

since it was incorporated by its president, said Munson, its secretary, said Ancker, and its treasurer, said Blackford, and its directors, officers and duly authorized agents, to keep at all times on deposit with said Temple State Bank an equal share of all moneys of such company on hand and available, and relying solely on such promises, representations and assurances as the main consideration moving and inducing him thereto, which was well known to said organization committee and said company and said trustee and their officers and directors, the appellee on the — day of August, 1909, subscribed for 250 shares of the capital stock of the proposed company, for which he paid and agreed to pay $5625 and paid $1406.25 in cash and executed his note for the balance and that said cash and note was delivered by said trustee to the appellant Southwestern Surety Insurance Company of Oklahoma upon its organization, and when it was organized in November, 1909, the said Munson as its president and the said Ancker as its secretary and the said Blackford as its treasurer, being thereunto duly authorized, assured appellee that the promises theretofore made appellee with reference to such deposits, when and upon which his said subscription payment and note was made, would be faithfully kept, and having reduced his note by payment to $4044.75 and relying upon said promises and assurances, appellee executed his note on January 24, 1910, in renewal of said balance, said renewal note maturing on May 1, 1910. That said company has not complied with its said obligations, promises or assurances and that said bank has not had such or any equitable share of said moneys and said company 'is now threatening to entirely withdraw from said bank all and every of the funds and moneys now to its credit in said bank, in direct violation and in total disregard of its said promises, representations and assurances which are also the promises, representations and assurances of its said officers and duly authorized agents, and which said acts of its officers and agents it accepted the benefits of and ratified and confirmed, although said company has during all the time since its incorporation had on hand very large sums and great amounts of money and said bank has never received and there has never been deposited therein by said company and to and for its credit an equal amount of the moneys and funds in cash and on hand belonging to said company, but that the amount of such funds and moneys received by said bank and held to the credit of the company has been small, in small amounts, and wholly out of proportion to the amount to which the bank under the said promises and assurances was entitled from time to time.' That on June 30th, 1910, said company had on hand $135,781.84 and at many times before and subsequent thereto said company had in its hands large sums of money at different times in excess of said amount, and that said bank has not had on deposit to the credit of said company, the equal share, proportion and amount of said funds to which it was entitled under said promises, assurances and contract. That said representations and assurances with reference to keeping such deposit of said company in Temple State Bank were made by the organization com-

mittee, the Southwestern Surety Insurance Company of Oklahoma, the Denison Bank & Trust Company, and their officers, agents and representatives thereunto duly authorized, for the sole purpose of defrauding and deceiving the appellee, and that said representations, promises and assurances were by said company fraudulently and deceitfully made and that appellee was by said assurances deceived and thereby induced to subscribe for stock, pay said amounts and execute said note, and that the ratification and renewal by said Southwestern Surety Insurance Company of Oklahoma of the promises made by its organization committee after the incorporation of said company, was made by said company in pursuance of the plan and design to deceive and cheat the appellee, and that said company used all of said promises merely as false pretenses to induce the appellee to subscribe for said stock, pay said money and deliver his note, by all of which appellee was defrauded and deceived in accordance with the fraudulent design from the beginning of the organization committee, for the benefit of said company, and which deceit was expressly ratified by the company, and that the company was thus guilty of such actual fraud as authorized the appellee to have the entire contract and the subscription for said stock rescinded, the subscription canceled, the money repaid and the note canceled. That the failure of the said company to comply with the said contract with appellee has destroyed the object of said contract, and that appellee is because of such fraudulent failure in accordance with the deceitful design, entitled to recover said money, to the cancellation of said note and subscription and in the event said note is collected of appellee by an innocent purchaser for value before maturity, appellee would be entitled to recover the amount of such payment over against said company, the said company having asserted to plaintiff that it transferred said note before maturity to an innocent purchaser for value. That said Southwestern Surety Insurance Company wholly disregarding its said obligation and assurances 'threatens and declares that it will at once withdraw the $5000 now to its credit in said bank . . . and will discontinue all deposits whatever with said bank, renounce its said contract, promises and assurances altogether.' That appellee called upon said company and tendered to it a rescission of said contract and has offered to arrange for and cause to be paid to it by said Temple State Bank said $5000 upon the return to appellee of said $1406.25, and the cancellation and surrender of said note, and appellee in all things has offered and insisted upon a rescission of said contract. Appellee in his petition alleges that the 'note for $4044.75 is in hands of Temple State Bank for collection at the instance of Southwestern Insurance Company, but that said company disclaims the ownership thereof and asserts that the same is not its property, but is the property of some other person or persons to plaintiff unknown, who, as plaintiff is informed and believes, and upon such information and belief alleges, will attempt to collect thereon from plaintiff as an innocent purchaser thereof for value,' and plaintiff further in his petition shows that should collection thereof be

had from appellee, that he would be entitled to recover the amount thereof over against the Southwestern Surety Insurance Company because of its said fraud and deception, and if said bank were permitted to pay said company said $5000, appellee would have no effective remedy at law against said company, as appellee would be unable to collect from said company and would be wholly without redress. The foregoing is a brief rehearsal of the allegations and substance of appellee's (plaintiff's in the court below) petition, which petition was duly verified by the affidavit of the plaintiff."

Appellant contends that the Act of 1909, authorizing appeals from orders granting injunctions, contemplates that no such order should be made ex parte, but that the matter should be set down for hearing, and the defendant given notice thereof, before the granting of such an order. Appellant suggests that if immediate relief be required for the protection of the plaintiff, the judge can grant a temporary order restraining the defendant until the time set for a hearing. While the course suggested is commended by reason and justice, and granting of ex parte injunctions should, as a general rule, be deprecated, still we are of opinion that it was not the intention of the Legislature in enacting the statute referred to, to restrict the power of judges or otherwise change the mode of procedure in reference to the granting of writs of injunction, except to permit an appeal from such orders. However, we are of opinion that appellee was not entitled to a writ of injunction, and that the judge committed error in granting such writ, for the reason that the petition upon which it was granted failed to show that appellee was entitled to that or any other relief.

An analysis of the plaintiff's petition shows that he is seeking to rescind a contract by which he became the owner of 250 shares of the capital stock of a certain corporation. He does not allege that the stock referred to has no value, nor does he allege that he is still the owner and holder of it, and offer to return it to the defendant corporation from which he obtained it. The petition contains repeated averments as to alleged promises to deposit funds in the bank of which the plaintiff was president and majority stockholder. However, the allegations referred to, though often repeated, fail to show that injury has or will result to the plaintiff, even though the representations and promises therein referred to were fraudulently made, as alleged. For instance, the petition alleges that the Southwestern Surety Insurance Company its agents and representatives, agreed and promised to deposit in the bank referred to an equal share of all moneys of such company on hand and available, but it does not show wherein compliance with that promise would have resulted in any benefit to the plaintiff, and wherein or how much he has been injured by reason of non-compliance therewith. The bank referred to is not complaining and is not the plaintiff, but is a private corporation, a separate and distinct person, and a party defendant. In the absence of an averment that it was worthless, the 250 shares of stock received by the plaintiff must be treated as a valuable and suf-

ficient consideration for the contract, and the failure to perform an additional promise to deposit money in a bank in which the complainant is a stockholder, is immaterial and of no importance to him, unless it is made to appear that pecuniary benefit would have resulted to him had such promise been complied with. Surely, in construing a bill in equity, asking for rescission of a contract and the extraordinary remedy of injunction, it can not be held that the mere fact of a failure to comply with an agreement to deposit money in a bank, which is a private corporation, is a showing of such injury to a complaining stockholder as will entitle him to equitable relief. In fact, such showing alone would be insufficient for the recovery of damages.

Aside from the omissions referred to, the averments in the petition in reference to the terms of the contract, and the failure to comply therewith, are too vague and uncertain. The petition fails to show what amount of funds the Southwestern Surety Insurance Company deposited elsewhere, and the specific amounts deposited in the Temple State Bank. In all these respects the petition is too indefinite, even if the plaintiff could base a cause of action for rescission upon the contingent proposition that if the contract had been complied with the bank would have made such additional profit as would have materially increased plaintiff's dividends as a stockholder therein. In fact the petition does not show that compliance with the contract would have benefited the plaintiff or the bank.

Again, if the petition had shown that compliance with the contract to deposit money in the bank would have resulted in benefit to the plaintiff, or if it could be assumed that such would be the result, then the petition admits that there was partial compliance, and that certain sums of money were deposited in the bank referred to, and yet the plaintiff does not offer to do equity by accounting for the benefits received by him therefrom. Furthermore, the petition shows that long after the alleged deceit and fraud had been perpetrated, and after the first payment made by him and the execution of the note for the remainder of the purchase price of the 250 shares of stock, he executed a renewal note, and the petition fails to show when he first acquired knowledge of the alleged fraud. If at the time of its execution he had knowledge of the facts now relied on for a rescission, his conduct in executing the renewal note must be treated as a re-affirmation of the original contract, and a waiver of any right to rescind. Furthermore, the ordinary and usual remedy for breach of contract is an action for damages and not rescission; and in order to obtain the latter relief, a plaintiff must in his petition make a full and complete disclosure of the entire transaction, and set up such state of facts as will make it appear, with reasonable certainty, that unless such relief be granted he will sustain serious and irreparable pecuniary injury. And, as a general rule, the mere loss of additional profits is not sufficient ground for rescission where the amount thereof is comparatively small and can be recovered in an action for damages. In the case at bar the petition is insufficient for the reason that it indi-

cates that the plaintiff, by and through the contract which he seeks to rescind, has acquired 250 shares of stock, the value and earning capacity of which is not disclosed. If the stock is worth as much as he agreed to pay for it, and is likely to yield fair and reasonable dividends, then he is not entitled to relief by rescission of the contract, even if it be true that compliance with the agreement to deposit money in the bank might have indirectly resulted in an additional benefit to him.

For the reasons stated, we are of opinion that the plaintiff's petition failed to state a cause of action, and failed to disclose any right to an injunction or other restraining order; and therefore the order of the district judge granting a writ of injunction is set aside and the writ of injunction issued in pursuance thereof is declared null and void.

*Injunction vacated.*